UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO,

                Petitioner,                Case No. 1:11-cv-867

v.                                              Honorable Robert J. Jonker

SHIRLEE HARRY et al.,

                Respondent.
_____/

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Matthew Catanzaro presently is incarcerated with the Michigan Department of Corrections and housed at the Pugsley Correctional Facility. In July 2006, Petitioner pleaded guilty in the St. Clair County Circuit Court to one count of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c. On August 28, 2006, he was sentenced, as a second felony offender, MICH. COMP. LAWS § 769.10, to a prison term of 3 to 22½ years.

Petitioner appealed his conviction to both the Michigan Court of Appeals and the Michigan Supreme Court. The supreme court denied leave to appeal on February 29, 2008. In April 2008, Petitioner filed a habeas petition in the Eastern District of Michigan, challenging his conviction and sentence. The district court issued an opinion and order denying habeas relief on March 18, 2009. *See Catanzaro v. Palmer*, No. 08-11458 (E.D. Mich. Mar. 18, 2008).

Thereafter, Petitioner filed a habeas petition in this Court, challenging on equal protection grounds an April 20, 2009 Michigan Parole Board decision denying Petitioner parole. *See Catanzaro v. Quigley*, No. 2:10-cv-28 (W.D. Mich.). On September 26, 2011, the Court dismissed the petition as moot because the Court found Petitioner was on parole at the time he filed his habeas petition. *Id.* (Ord. & J. Sept. 26, 2011). In particular, the Michigan Parole Board decided on July 23, 2010, to parole Petitioner effective August 31, 2010, conditioned on Petitioner's successful completion of a Residential Sex Offender Program ("RSOP") at the location of his release from MDOC custody. *Id.* MDOC released Petitioner on schedule to the RSOP, but not directly to the community, as the Parole Board had directed. *Id.*

Petitioner filed the instant petition on or about August 17, 2011, after he returned to MDOC custody on January 10, 2011, for engaging in assaultive behavior in the RSOP. He describes

his case as a "Hybrid" action, (Pet., docket #1, Page ID#1), and he filed a civil rights complaint that same date, in which he named as defendants the same individuals named in the instant action as Respondents, as well as numerous additional defendants. *See Catanzaro v. Harry et al.*, No. 1:11-cv-868 (W.D. Mich.). Petitioner captioned his civil rights complaint as a "Complaint Pursuant to Civil Rights Act of 42 U.S.C. § 1983 and 28 U.S.C. § 2254 Habeas Corpus/Hybrid." On September 16, 2011, Petitioner filed an amended application for writ of habeas corpus in the instant case (docket #3), and an amended complaint in Case No. 1:11-cv-868 (docket #6), referencing in each the "hybrid" nature of the actions.

In his amended petition, which is essentially identical to his original petition, Petitioner states no more than that he is challenging an August 2010 parole decision. He includes no factual allegations, but simply refers the Court to his civil rights complaint. In his amended civil rights complaint, Petitioner complains that he should have been paroled to his home rather than to a psychiatric treatment program called the Residential Sex Offender Program (RSOP) in Muskegon. He alleges that the decision to parole him to RSOP, rather than to his home or the community, violated his right to due process and equal protection. He further alleges that Respondents Berrios and Condino placed him in the RSOP program in retaliation for Petitioner's habeas petition filed in *Catanzaro v. Quigley*, No. 2:10-cv-28 (W.D. Mich.).[1]

## Discussion

I.   Relief in Habeas Proceeding

---

[1] Petitioner's civil rights complaint also makes allegations about his allegedly unconstitutional treatment in the RSOP program. He alleges another equal protection claim based on an assertion that, while he was in the RSOP program, he was treated differently than African American prisoners, ultimately resulting in his being transferred back to prison. In addition, the complaint raises civil rights claims under the First and Eighth Amendments.

It is unclear whether Petitioner originally sought to bring a single, hybrid action raising both his habeas claims and his civil rights claims. He completed two separate documents, one of which was a form habeas petition and the other of which was captioned principally as a civil rights complaint under 42 U.S.C. § 1983. Each was docketed as a separate legal action.

Regardless of Petitioner's original intent, the law does not provide for the disposition of both habeas claims and civil rights claims in a habeas corpus action. Where a prisoner is challenging the fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Here, Petitioner challenges an August 2010 parole decision that paroled him to the RSOP inpatient program rather than the community at large. Assuming such a challenge is still cognizable even after Petitioner returned to MDOC custody based on superceding event of his assaultive conduct in the RSOP program, the sole procedural vehicle for the challenge would be habeas corpus review, and the sole relief available on habeas review would be immediate or speedier release from confinement. *Id.* at 494 ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy.").[2]

Further, with respect to Petitioner's remaining claims about the constitutionality of his treatment in the RSOP program, habeas corpus is not available to prisoners who are complaining

---

[2] Moreover, to the extent that Petitioner seeks monetary damages for Respondent's August 2010 decision to denying him community parole, his claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus"). *See Carney v. Sundquist*, No. 96-5320, 1997 WL 135619, at *2 (6th Cir. Mar. 24, 1997).

only of the conditions of their confinement or mistreatment during their legal incarceration. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Lutz v. Hemingway*, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007). Complaints raised by Petitioner in his civil rights action that involve conditions of confinement "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Lutz*, 476 F. Supp. 2d at 718 (quoting *Maddux v. Rose*, 483 F. Supp. 661, 672 (E.D. Tenn. 1980)). They therefore are not cognizable in a habeas corpus proceeding.

In sum, the sole issue before the Court in this habeas petition is whether Petitioner's constitutional rights were violated by the parole board's August 2010 decision to parole him to the RSOP program, rather than to the community. They were not, and so Petitioner's habeas claim must be dismissed.

II. Due Process

Petitioner claims that Respondents violated his due process rights by paroling him to the RSOP program rather than paroling him to the community. He contends that, because he received a mental-health assessment supporting his parole to the community, he should not have been paroled to an inpatient program.

To establish a procedural due process violation, a Petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Petitioner fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole, much less being released on parole to a particular setting. There is no

constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  In a recent published decision, the Sixth Circuit reiterated the continuing validity of *Sweeton*.  *See Crump v. Lafler,* ___ F.3d ___, 2011 WL 4359901, at **6-7 (6th Cir. Sept. 20, 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his 22½-year maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere

hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole to the community, therefore, implicates no federal right. In the absence of a liberty interest, Petitioner's procedural due process claim is without merit.

### III. Equal Protection

Petitioner next alleges that the Parole Board denied him equal protection by paroling him to the RSOP program while paroling similarly situated African Americans to the community. (Am. Compl., docket #6, Page ID#107.) He alleges no facts in support of his claim. Instead, he refers the Court to allegations in his earlier habeas action, *Catanzaro v. Quigley*, Case No. 2:10-cv-28.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. To establish a violation of the Equal Protection Clause, an inmate must show that the Respondents purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the Respondents. *Id.* at 265-66.

Petitioner's allegations on this point are wholly conclusory. He merely states that he was treated differently in the parole decision from unspecified others because he is white. Petitioner

provides no factual allegations to support his contention. Conclusory allegations of unconstitutional conduct without specific factual are insufficient to support a claim for relief. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court rejects Petitioner's attempt to renew claims made in a prior habeas corpus action simply by referencing his allegations that case. This Court has no obligation to review the records in multiple cases simply to determine the content of the present petition. *See Martin*, 391 F.3d at 714 (holding that, while *pro se* litigants are entitled to lenient interpretations of their pleadings, "the 'leniency standard' has still required basic pleading standards," and the court need not "conjure allegations on a litigant's behalf").[3] Based on his present allegations, Petitioner fails to allege any facts in support of his claim that his parole placement violated the Equal Protection Clause.

IV. Retaliation

Petitioner next claims that Respondents placed him in the RSOP residential program in retaliation for his having filed *Catanzaro v. Quigley*, No. 2:10-cv-28 (W.D. Mich.). Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, Petitioner must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Petitioner must be able to prove that

[3] Indeed, the Court had no obligation to review Petitioner's claims raised in his separate civil rights complaint simply because Petitioner declared his intent to file a "hybrid" action. However, in light of Petitioner's *pro se* status, the Court has liberally construed Petitioner's habeas application by reference to the allegations of Case No. 1:11-cv-868, which was filed simultaneously with the instant petition. That same liberality does not extend so far as to require the Court to refer to a separate action filed more than a year prior to the instant action which challenged a wholly separate parole decision. *Martin*, 391 F.3d at 714.

the exercise of the protected right was a substantial or motivating factor in Respondents' alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Petitioner merely alleges the ultimate fact of retaliation in this action. First, although Petitioner named one of the Respondents in the instant action as a respondent in the earlier case, the only proper respondent in this or any other habeas action is the state officer who had custody of Petitioner at the time the habeas action was filed. *See* Rule 2(a), RULES GOVERNING § 2254 CASES. Petitioner 2010 habeas action was served only on his custodian at that time and on the Michigan Attorney General. Petitioner has not presented any facts to support his conclusion that the improperly named respondents in that action, which was never served upon them, retaliated against

Petitioner by paroling him to the RSOP program. Accordingly, Petitioner's speculative allegation fails to set forth a meritorious federal claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:      December 29, 2011            /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE